**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| IN RE: | CASE NO. 23-15483-LMI |
|---|---|
| ATLANTIC RADIO TELEPHONE, INC., | CHAPTER 11 |
| Debtor. | |

**DEBTOR'S *EMERGENCY* MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH**
**COLLATERAL AND REQUEST FOR EXPEDITED HEARING**

> **The Debtor respectfully requests that an *emergency* hearing be conducted by the Court. Absent use of cash collateral, the Debtor runs the risk of irreparable harm to its business.**

ATLANTIC RADIO TELEPHONE, INC. ("Debtor"), by and through its proposed undersigned counsel, files this *Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Request for Expedited Hearing* ("Motion"), and in support of this Motion, states as follows:

**BRIEF STATEMENT OF RELIEF REQUESTED**

By this Motion, the Debtor respectfully requests that the Court enter interim and final orders authorizing the Debtor's use of cash collateral in accordance with the budgets attached hereto as **Exhibit "A"** (interim) and **Exhibit "B"** (final).  A copy of the proposed interim order is attached hereto as **Exhibit "C"**.  A proposed final order shall be filed in advance of the final hearing. The Debtor proposes to use cash collateral, on an interim basis, for purposes of funding payroll, rent, insurance and other costs related to its business operations.

Approval of the instant Motion is necessary and critical to the Debtor's ongoing business operations, as well as for the preservation of asset and collateral value.

The information relevant to the Court's consideration of this Motion is as follows:

- *Affected Secured Creditors:* *Popular Bank*
  *Small Business Administration ("SBA")*

- *Basis for Secured Claims:* *Security Agreements and Recorded UCC-1s[1]*

- *Amount Owed:* *Popular Bank ($300,000.00)*
  *SBA ($148,000.00)*

- *Proposed CC Use:* *Approx. $537,552.21   (21-days)*

- *Stipulations by Debtor:* *None (on an interim basis)*

- *Adequate Protection:* *(a) Continuing Liens; and (b) Replacement Liens, but only to the extent the Continuing Liens are not sufficient to protect against diminution in the value of the Pre-Petition Collateral.*

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (M).

2.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 361, 362, and 363.

## INTRODUCTION

*A.     Organization and Management*

3.     The Debtor is a Florida corporation and has been operating continuously since 1976.  The Debtor's sole shareholder is its founder, Conrad J. Webber, Sr.  The Debtor's day-to-day operations are managed by Conrad J. ("CJ") Webber, Jr.  CJ Webber has been employed by

---

[1] Based on public records, it appears that the SBA recorded first; however, upon information and belief, Popular Bank, who recorded *after* the SBA, may have received an assignment of the lien from Wachovia Bank, who recorded *before* the SBA. There is no UCC-3 evidencing an assignment of the Wachovia Bank lien to Popular Bank.

the Debtor since 1993 and has managed the day-to-day operations for approximately eight (8) years.

**B.      Business Operations**

4.      The Debtor provides navigation and communication solutions to the marine community and maintains a factory certified technical service and installation team with decades of experience.

5.      The Debtor employs thirty-five (35) people consisting of customer service, finance, installation, marketing, operations, purchasing, sales, and warehouse personnel.

6.      The Debtor operates at 2494 NW 35th Avenue, Miami, Florida 33142.   The Debtor's premises are owed and leased to the Debtor by C. Webber Enterprises, Inc., an entity owned by Conrad J. Webber, Sr.  The premises has been owned by C. Webber Enterprises, Inc., and leased to the Debtor, since approximately 1981.

**C.      Financials**

7.      For the fiscal year ending December 31, 2022, the Debtor achieved net income of approximately $200,000.00 on gross income of approximately $19,350,000.00. As of December 31, 2022, the Debtor had total assets of just over $5,000,000.00 and liabilities of approximately $3,370,000.00. Through May 31, 2023, the Debtor had net income of approximately ($81,000.00) on gross income of approximately $6,500,000.00.  Finally, for the year ending December 31, 2021, the Debtor had a net income of ($274,570.00) on gross revenues of $18,772,245.00.

**D.      Financing**

8.      The Debtor has a secured line of credit with Popular Bank in the amount of $300,000.00 (the "Line of Credit"). The line of credit is secured by a lien on substantially all of

the Debtor's assets, as well as a mortgage lien against a building owned by C. Webber Enterprises, Inc., an entity owned by Conrad J. Webber, Sr., and leased to the Debtor.

9.      The Debtor also received an economic injury disaster loan (the "EIDL Loan"), and a loan under the paycheck protection program (the "PPP Loan"), with the Small Business Administration (the "SBA").  The Debtor is current on the EIDL Loan, and the PPP Loan was forgiven.

## EVENTS LEADING TO BANKRUPTCY

10.     There has been increased competition in the satellite business.

11.     The Debtor fell behind with at least one large creditor, who provides satellite service access to the Debtor. While the Debtor has been able to reduce the amount of debt owed in arrears, the Debtor was recently unable to satisfy the entire monthly obligation due. Consequently, the creditor declared a default and threatened to suspend service.

12.     In order to avoid suspension of service, as well as to restructure debt, the Debtor opted to file for relief under Chapter 11.

13.     It is the Debtor's intention to file a plan of reorganization in the very near future and to provide a very substantial, if possible, full recovery to creditors.

## RELIEF REQUESTED

14.     By this Motion, the Debtor seeks interim and final orders authorizing the Debtor to use cash collateral in order to operate the Debtor's business.

15.     The Debtor seeks authority to use cash collateral in accordance with the budgets attached hereto as **Exhibit "A"** and **Exhibit "B."**  Exhibit "A" represents the "interim budget" (the "Interim Budget") which will govern use of cash collateral pending a final hearing on this Motion (the "Interim Period") in order to avoid immediate and irreparable harm to the estate.

4

Exhibit "B" represents the budget which will govern use of cash collateral following a final hearing on this Motion (the "Final Budget") (the Interim Budget and the Final Budget are hereinafter collectively referred to as the "Budgets").

## ARGUMENTS IN SUPPORT OF RELIEF REQUESTED

16.     SBA appears to hold a first-priority lien against substantially all of the Debtor's assets, while Popular Bank holds a second-priority lien against substantially all of the Debtor's assets, including accounts receivable and inventory.[2]

17.     The recorded liens likely extend to collateral representing cash collateral within the meaning of 11 U.S.C. § 363(a).

18.     It is essential to the continued operation of the Debtor's business for the Debtor to have the ability to utilize cash collateral.

19.     The Debtor believes that adequate protection will be provided as a result of any equity cushion in favor of SBA and Popular Bank and by providing continuing and replacement liens proposed herein in favor of SBA and Popular Bank.

20.     There is insufficient time for a full hearing to be held before the Debtor must use cash collateral. If this Motion is not considered on an expedited basis, and if the Debtor is denied the ability to immediately use cash collateral, there will be a direct and immediate material and adverse impact on the continuing operation of the Debtor's business and on the value of its assets and overall business operations. In order to continue its business operations in an effort to achieve a successful reorganization, the Debtor must use cash collateral in its ordinary business operations. The inability of the Debtor to meet ordinary business expenses will result in irreparable injury to the Debtor and could negatively impact the Debtor's chances for a

---

[2] See n.1, *supra.*

successful reorganization.

21.     If allowed to use cash collateral, the Debtor believes it can maintain its business operations.

## AUTHORITY IN SUPPORT OF RELIEF REQUESTED

22.     Pursuant to 11 U.S.C. § 363(c)(2)(B) of the Bankruptcy Code, a debtor-in-possession may use cash collateral with court approval after notice and a hearing. Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Respectfully, the Court should approve the Debtor's proposed use of cash collateral because the interests in cash collateral of Popular Bank will be adequately protected during the Debtor's continued business operations.

23.     Adequate protection can be provided by a number of different methods. Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3). Adequate protection may also be provided or otherwise realized by the existence of an equity cushion in the collateral.

24.     What constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In*

*re Martin*, 761 F.2d 472 (8th Cir. 1985). However, regardless of how adequate protection is provided, the focus of the requirement is to protect a secured creditor from diminution in value of its interest in the collateral during the period of use by the debtor. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

25.    Adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim). As the court in *In re Megan Racine Assoc., Inc.*, 202 B.R. 660 (Bankr. N.D.N.Y. 1996) noted:

> Adequate protection . . . is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of the debtor's reorganization that is due to the imposition of the stay or is traceable to the use of such property.

Id. at 663.

26.    Popular Bank is entitled to protection against the decline in value of its security interest in pre-petition collateral resulting from the Debtor's use of cash collateral.

27.    As of May 31, 2023, excluding cash, the Debtor estimates the value of its primary assets as follows: (a) Accounts Receivable: $1,600,000.00; (b) Equipment: $677,000.00; and (c) Inventory: $3,200,000.00. While there is some variation between May 31, 2023 and July 13, 2023, the Debtor estimates the values remain similar.

28.    The Debtor submits that SBA and Popular Bank are over-secured when considering the value of the Debtor's accounts receivable, equipment, and inventory. As the

Debtor collects pre-petition accounts receivable, and uses the proceeds towards operating expenses, the Debtor will acquire new inventory and generate new accounts receivable against which SBA and Popular Bank shall be afforded a replacement lien.

29.     Accordingly, the Debtor believes that the continuing and replacement liens will result in the interests of SBA and Popular Bank being adequately protected.

30.     As can be seen from the attached Budgets, the Debtor's cash position improves over the 13-week cycle (Exhibit "B"), which is indicative of the value of the continuing and/or replacement liens as adequate protection.

31.      During the 13-week cycle, the Debtor projects sales in the amount of approximately $4,7000,000.00 and a net increase in cash of approximately $175,000.00.

32.     In light of the foregoing, the Debtor submits that the use of cash collateral is appropriate in accordance with the Budgets.

### REQUEST FOR PRELIMINARY HEARING

33.     The Debtor respectfully requests that the Court conduct an emergency hearing pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2) and further conduct a final hearing on not less than 15 days' notice.  The Debtor requests that the Court authorize the Debtor to use cash collateral on an interim basis pending a final hearing in accordance with the Interim Budget.

34.     The Debtor requests that the Court conduct a final hearing and authorize the Debtor's use of cash collateral in accordance with the Final Budget.

### RESERVATION OF RIGHTS

35.     By submitting this request, the Debtor does not waive any rights, including without limitation, the right to (a) object, challenge or contest the extent, validity or priority of any of pre-petition lien(s), (b) value any or all of the collateral securing such liens, (c) contest or

challenge whether any lien extends to cash collateral, and (d) object to any claim of any secured creditor.

**WHEREFORE,** the Debtor respectfully requests that this Court (a) enter an interim order granting the Motion in the form attached as ***Exhibit "C"*** and authorizing the interim use of cash collateral in the operation of its business in accordance with the Interim Budget attached as ***Exhibit "A"***, (b) scheduling a final hearing in order to authorize the Debtor's use of cash collateral, and (c) entering a final order authorizing use of cash collateral in accordance with the proposed Final Budget attached as ***Exhibit "B"*** (the form of the proposed order shall be filed with the Court in advance of the final hearing), as well as granting such other and further relief that the Court may deem just and proper.

**RESPECTFULLY SUBMITTED** this 16th day of July 2023.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

**SEESE, P.A.**
*Proposed* Attorneys for Debtor-in-Possession
101 N.E. 3rd Avenue
Suite 1500
Ft. Lauderdale, Florida 33301
Telephone: (954) 745-5897

By: _____ ***s/Michael D. Seese*** _____
Michael D. Seese, Esq.
Fla. Bar No. 997323
mseese@seeselaw.com

## <u>CERTIFICATE OF EXIGENT CIRCUMSTANCES</u>

**I HEREBY CERTIFY** that an emergency hearing has been requested, since the relief requested is critical to the administration of this estate and to the Debtor's business operations in connection with this case. Absent use of cash collateral, the Debtor will be unable to operate and, therefore, the Debtor and the estate shall suffer immediate and irreparable harm.

<u>/s/ Michael D. Seese</u>
Michael D. Seese, Esq.

**EXHIBIT "A"**

***Interim Budget***

**Atlantic Radio Telephone, Inc.**
**3 Month Cash Flow Forecast**
Effective Date — 14-Jul-23
Start Date

| Fridays in the Month | Fri 14-Jul | Sat 15-Jul | Sun 16-Jul | Mon 17-Jul | Tue 18-Jul | Wed 19-Jul | Thu 20-Jul | Fri 21-Jul | Sat 22-Jul | Sun 23-Jul | Mon 24-Jul | Tue 25-Jul | Wed 26-Jul | Thu 27-Jul | Fri 28-Jul | Sat 29-Jul | Sun 30-Jul | Mon 31-Jul | Tue 1-Aug | Wed 2-Aug | Thu 3-Aug | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $293,453.76 | | | | | | | | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | | | | | | | | | |
| Airtime Sales | | | | | | | | | | | | | | | | | | | $240,000.00 | $160,000.00 | | $400,000.00 |
| Other Sales Income | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $850,000.00 |
| **Total Receipts** | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $40,476.19 | $280,476.19 | $200,476.19 | $40,476.19 | $1,250,000.00 |
| **Disbursements** | | | | | | | | | | | | | | | | | | | | | | |
| ART Payroll | $50,843.08 | | | | | | | | | | | | | | $50,843.08 | | | | | | | $101,686.16 |
| ART Payroll Taxes | $15,166.93 | | | | | | | | | | | | | | $15,166.93 | | | | | | | $30,333.86 |
| **Total Payroll** | $66,010.01 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $66,010.01 | $ - | $ - | $ - | $ - | $ - | $ - | $132,020.02 |
| **Deductions** | | | | | | | | | | | | | | | | | | | | | | |
| Advertising (Google, Yahoo, Facebook)) | $10,000.00 | | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $3,000.00 | | $37,000.00 |
| Auto Expense (payments, Lease, Insurance) | $342.57 | $150.00 | | | $796.90 | | | | $150.00 | | | $2,150.68 | $1,097.28 | | | $150.00 | | $1,023.65 | | | | $5,861.08 |
| Freight Expenses for Orders | | | | | | | | | | | | | | | $25,000.00 | | | | | | | $25,000.00 |
| Florida Department on Revenue - Sales Tax | | | | | | $9,000.00 | | | | | | | | | | | | | | | | $9,000.00 |
| Insurance (Company & Payroll) | $1,551.54 | | $1,744.75 | $272.15 | | | $1,696.42 | $1,538.19 | | | | | | | | | | | $14,220.62 | $65.00 | $6,243.62 | $27,332.29 |
| Netsuite | $9,500.00 | | | | | | | | | | | | | | | | | | | | | $9,500.00 |
| Rental Storage Units | $450.00 | | | | | | | | | | | | | | | | | | | | | $450.00 |
| IT Support | $2,500.00 | | | | | | | $2,500.00 | | | | | $2,500.00 | | | | | | | $2,500.00 | | $10,000.00 |
| Bank Fees | | | | | | | | | | | | | | | | | | | $2,200.00 | | | $2,200.00 |
| Utilities | $701.69 | | | | | | $1,372.15 | | | | | | | $135.00 | | | | $3,000.00 | | | | $5,208.84 |
| Miscellaneous | $ - | | | | | | | $2,000.00 | | | | | | | | $2,000.00 | | | | | | $4,000.00 |
| Inventory Assets - new or current orders | $100,000.00 | | | $100,000.00 | | | | | | | $100,000.00 | | | | | | | $100,000.00 | | | | $400,000.00 |
| | | | | | | | | | | | | | | | | | | | | | | $ - |
| **Total Deductions** | $125,045.80 | $150.00 | $1,744.75 | $103,272.15 | $796.90 | $12,000.00 | $1,696.42 | $9,038.19 | $1,522.15 | $3,000.00 | $100,000.00 | $5,150.68 | $1,232.28 | $5,500.00 | $2,000.00 | $3,150.00 | $ - | $129,023.65 | $19,420.62 | $5,565.00 | $6,243.62 | |
| **Ending Cash Balance** | $142,874.14 | $40,326.19 | $38,731.44 | $(62,795.96) | $39,679.29 | $28,476.19 | $38,779.77 | $31,438.00 | $38,954.04 | $37,476.19 | $(59,523.81) | $35,325.51 | $39,243.91 | $34,976.19 | ######### | $37,326.19 | $40,476.19 | $(68,547.46) | $261,055.57 | $194,911.19 | $34,232.57 | |

**EXHIBIT "B"**

*Final Budget*

| Atlantic Radio Telephone, Inc.<br>3 Month Cash Flow Forecast<br>Effective Date 14-Jul-23<br><br>Start Date<br><br>Fridays in the Month | Month 1<br>14-Jul-23<br>13-Aug-23<br>5 | Month 2<br>14-Aug-23<br>13-Sep-23<br>4 | Month 3<br>14-Sep-23<br>13-Oct-23<br>5 | Total |
|---|---|---|---|---|
| Beginning Cash Balance | $ 293,453.76 | $ 344,683.74 | $ 368,414.72 | $ 368,414.72 |
| | | | | |
| *Receipts* | | | | |
| Airtime Sales | $ 720,000.00 | $ 720,001.00 | $ 720,002.00 | $ 2,160,003.00 |
| Other Sales Income | $ 850,000.00 | $ 850,000.00 | $ 850,000.00 | $ 2,550,000.00 |
| | | | | |
| Total Receipts | $ 1,570,000.00 | $ 1,570,001.00 | $ 1,570,002.00 | $ 4,710,003.00 |
| | | | | |
| | | | | |
| *Disbursements* | | | | |
| ART Payroll | $ 101,686.16 | $ 101,686.16 | $ 101,686.16 | $ 305,058.48 |
| ART Payroll Taxes | $ 30,333.86 | $ 30,333.86 | $ 30,333.86 | $ 91,001.58 |
| | | | | |
| Total Payroll | $ 132,020.02 | $ 132,020.02 | $ 132,020.02 | $ 396,060.06 |
| | | | | |
| | | | | |
| *Deductions* | | | | |
| | | | | |
| Advertising (Google, Yahoo, Facebook) | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 150,000.00 |
| Auto Expense (payments, Lease, Insurance) | $ 5,600.00 | $ 5,600.00 | $ 5,600.00 | $ 16,800.00 |
| Freight Expenses for Orders | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 75,000.00 |
| Florida Department on Revenue - Sales Tax | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 27,000.00 |
| Insurance (Company & Payroll) | $ 33,000.00 | $ 33,000.00 | $ 33,000.00 | $ 99,000.00 |
| Netsuite | $ 9,500.00 | $ 9,500.00 | $ 9,500.00 | $ 28,500.00 |
| Rental Storage Units | $ 450.00 | $ 450.00 | $ 450.00 | $ 1,350.00 |
| IT Support | $ 30,000.00 | $ 30,000.00 | $ 30,000.00 | $ 90,000.00 |
| Bank Fees | $ 2,200.00 | $ 2,200.00 | $ 2,200.00 | $ 6,600.00 |
| Utilities | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 36,000.00 |
| Miscellaneous | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 30,000.00 |
| Debtor's Counsel (excudes retainer) | $ - | $ 20,000.00 | $ 20,000.00 | $ 40,000.00 |
| SubV Trustee | $ - | $ 7,500.00 | $ 7,500.00 | $ 15,000.00 |
| Inventory Assets - new or current orders | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,200,000.00 | $ 3,600,000.00 |
| | | | | |
| Total Deductions | $ 1,386,750.00 | $ 1,414,250.00 | $ 1,414,250.00 | $ 4,215,250.00 |
| | | | | |
| | | | | |
| | | | | |
| Ending Cash Balance | $ 344,683.74 | $ 368,414.72 | $ 392,146.70 | $ 467,107.66 |

**EXHIBIT "C"**


*Interim Order*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| IN RE: | CASE NO. 23-15483-LMI |
|---|---|
| ATLANTIC RADIO TELEPHONE, INC., | CHAPTER 11 |
| Debtor. | |

**INTERIM ORDER AUTHORIZING USE OF CASH**
**COLLATERAL AND SETTING FURTHER HEARING**

**THIS MATTER** came before the Court on _____, 2023, at _____ a.m./p.m.,

upon the scheduled emergency hearing (the "Hearing") on the Debtor's *Emergency Motion for*

*Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Request for Expedited*

*Hearing* [ECF No. ____ ] (the "Motion"), and the Court, having (a) reviewed the file, (b) reviewed

the "Interim Budget" attached to the Motion as **Exhibit "A"**, (c) heard any and all arguments

and/or presentations of counsel, (d) heard the proffered testimony, which was not disputed; (e)

found that good and sufficient notice was provided in accordance with Federal Rule of Bankruptcy Procedure 4001-2; (e) found that good and sufficient cause exists in support of relief on an emergency basis; and (f) found that the requested use of cash collateral in accordance with the Interim Budget is necessary in order to avoid immediate and irreparable harm to the Debtor's estate.  Accordingly, the Court being otherwise fully advised in the premises and based further on the entire record of the Hearing, it is

**ORDERED** as follows:

1.    The Motion is GRANTED as provided in this "Interim Order."

2.    The Debtor is authorized to use "cash collateral," as that term is defined in 11 U.S.C. § 363(a) (the "Cash Collateral") upon the following terms and conditions:

(A)    The Debtor may use Cash Collateral solely for the purpose of funding those expenses in accordance with the Interim Budget, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference, together with any additional amounts to which the Secured Creditors (hereinafter defined) have afforded prior written consent, *subject, however*, to payment of any fees to the Clerk of the Court.

(B)    As adequate protection for the interests of the SBA and Popular Bank (collectively, the "Secured Creditors") in the Cash Collateral, and not to exceed the amount of Cash Collateral used by the Debtor, the Secured Creditors are granted, without any further action, continuing liens ("Continuing Liens") as of the Petition Date on and security interests in all property of the Debtor of the same description, type and nature as was subject to the Secured Creditors' pre-petition liens and security interests with such Continuing Liens to have the same extent, validity and priority as existed as of the Petition Date; *provided, however*, that the Continuing Liens shall be at all times subject and junior to the Administrative Carveout (as

2

hereinafter defined) and any Professional Fee Carveout (as hereinafter defined). For avoidance of doubt, the Continuing Liens shall not attach to any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute;

(C)    As additional adequate protection for the Debtor's use of Cash Collateral, but only to the extent that the Continuing Liens are not sufficient to protect against any diminution in the value of the Prepetition Collateral as a result of such use of Cash Collateral, the Secured Creditors shall be granted, without any further action, valid, binding, enforceable, fully perfected, replacement liens and first priority security interests in the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (the "Replacement Liens") junior only to: (i) the Administrative Carveout (as hereinafter defined) and any Professional Fee Carveout (as hereinafter defined); and (ii) valid, enforceable, properly perfected and unavoidable prepetition liens existing on the Petition Date upon assets that do not constitute Prepetition Collateral. The Replacement Liens shall not attach to any causes of action that could be brought under §§ 544-548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute;

(D)    The Continuing Liens and Replacement Liens shall be deemed duly and automatically perfected under all applicable laws, and no further notice, filing, recordation or order shall be required to effectuate such perfection. Debtor and Secured Creditors shall not be required to execute mortgages, security agreements, corporate resolutions or other documents or record further financing statements or take any other steps under applicable law, or otherwise, to create or perfect the Continuing Liens and Replacement Liens authorized hereunder.

3

(E)      The Continuing Liens and Replacement Liens shall be at all times subject and junior to: (i) all unpaid fees required to be paid to the Clerk of the Court (collectively, the "Administrative Carveout"); and (ii) any carveout for the benefit of professionals agreed to by Secured Creditors as part of any final cash collateral order (the "Professional Fee Carveout" and, together with the Administrative Carveout, the "Carveouts");

(F)      The Debtor's authorization to use Cash Collateral shall be effective through and including the date of the Final Hearing (defined hereinafter) (the "Interim Period"), unless otherwise terminated hereunder;

(G)      The Debtor's authorization to use the Cash Collateral shall terminate on the earlier of:  (i) the expiration of the Interim Period; (ii) by entry of a further order of this Court; or (iii) the occurrence of any of the following (an "Event of Default") unless such Event of Default is otherwise waived by the affected Secured Creditor:

      (i)      the failure of Debtor to materially comply with the terms and provisions of this Interim Order; *provided* that the Secured Creditors shall notify Debtor's counsel in writing by telephone facsimile or e-mail of any noncompliance by Debtor with the terms and provisions of this Interim Order, and the Debtor shall have three (3) business days from the sending of the notice to cure such noncompliance;

      (ii)      any post-petition lien (other than any lien(s) recorded against the property as of the petition date) is recorded against the assets of the bankruptcy estate, except any lien granted on assets of the bankruptcy estate to secure post-petition financing to which lien the Secured Creditors have consented or which has been granted pursuant to an order of this Court; or

      (iii)      the appointment of a trustee (excluding a SubV Chapter 11 Trustee) or an examiner, or conversion of this case to a Chapter 7 case.

(H)      Upon the occurrence of an Event of Default, (i) the Debtor shall no longer have authority to use the Cash Collateral, but any and all accrued amounts under the Carveouts, through the date of Event of Default, shall be unaffected by the Event of Default, and (ii) the

4

Secured Creditors shall be entitled to an expedited hearing, on at least seventy-two (72) hours' notice to the Debtor and its counsel and any other party or entity who may claim a lien against the Debtor's assets, on relief from the automatic stay under 11 U.S.C. § 362.  Notwithstanding an Event of Default, the foregoing are without prejudice to the rights of the Debtor to oppose such relief and to otherwise seek and obtain an entry of an order by the Court authorizing continued use of Cash Collateral; and

(I)	The Debtor shall cause to be served on the Secured Creditors and their counsel copies of all pleadings, notices, proposed orders and other papers tendered to or filed by Debtor with this Court in connection with this Chapter 11 case.

3.	Nothing herein contained shall constitute an acknowledgment that the Secured Creditors are adequately protected nor shall it prejudice, impair or otherwise affect the rights of the Secured Creditors under the Bankruptcy Code and Bankruptcy Rules or other applicable law; *provided, however,* the foregoing shall be without prejudice or waiver of the Debtor's rights, claims, and defenses hereunder or under the applicable provisions of the Bankruptcy Code and other applicable law, and the Debtor reserves any and all rights to challenge and/or seek a determination as to: (a) the extent to which any of the Secured Creditors is entitled to any Continuing Liens or Replacement Liens; (b) the value of any collateral, including, without limitation, Prepetition Collateral; and (c) object to any claim of the Secured Creditors.

4.	Nothing contained herein shall be construed or deemed a waiver of any claims by any third parties.

5.	The Debtor shall not engage in any transaction which is not in the ordinary course of its business, except as otherwise authorized by the Court.

6.    Unless agreed to in writing by the affected Secured Creditors or authorized by this Court, the Debtor shall not create, assume, or hereafter cause to exist any lien or security interest in the property of the estate or the Cash Collateral in favor of any entity other than Secured Creditors.

7.    Any and all controversies or disputes over the interpretation or performance of the terms and conditions of this Interim Order shall be determined by this Court upon application or motion made by the Secured Creditors, Debtor or other parties-in-interest; Debtor and the Secured Creditors agree that any such application or motion by either of them may be heard on at least seventy-two (72) hours' notice to the other party; the foregoing shall include, without limitation, any motion to compel performance of the terms and provisions of this Interim Order.

8.    This Interim Order shall not be construed as consent by the Secured Creditors to the assessment of their collateral or the Cash Collateral pursuant to 11 U.S.C. § 506(c).

9.    This Interim Order is without prejudice to the rights of Debtor and the Secured Creditors to seek modification of it or relief in accordance with applicable law.

10.    **A final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, at _____ a.m./p.m.  at United States Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Courtroom 8, Miami, FL 33128.**

11.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Interim Order.

###

Submitted by:

Michael D. Seese, Esq.
Seese, P.A.
101 N.E. 3rd Avenue, Suite 1500
Ft. Lauderdale, FL 33301
Telephone No.: (954) 745-5897
mseese@seeselaw.com

Copies to:

Michael D. Seese, Esq., who is directed to serve a copy of this Order upon all non-registered users or registered users who have yet to appear electronically in this case and file a conforming certificate of service.